UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KIM PINDAK, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 10 C 6237 ) |
| THOMAS DART, Sheriff of Cook County, and COOK COUNTY, ILLINOIS, | ) Judge Rebecca R. Pallmeyer ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Kim Pindak ("Plaintiff" or "Pindak") filed this complaint on September 29, 2010 against Defendants Thomas J. Dart, Sheriff of Cook County, and Cook County, Illinois ("Cook County") (collectively "Defendants"). Plaintiff asserts that Defendants have imposed a "blanket prohibition on peaceful panhandling" in the Daley Plaza. This policy, Plaintiff contends, violates the First Amendment of the United States Constitution ("First Amendment"), both facially and as applied to Plaintiff. He seeks declaratory, injunctive, and monetary relief. Defendants moved to dismiss Plaintiff's claims under FED. R. Civ. P. 12(b)(6), contending that Plaintiff lacks standing to seek injunctive relief; that this court should abstain pursuant to *Younger v. Harris*; and that, assuming the alleged policy does indeed exist, said policy is a valid time, place, and manner restriction, and thus does not violate the First Amendment. (Defs.' Mot. to Dismiss [14] at 1-2.) For the reasons explained below, Defendants' motion to dismiss is denied.

**FACTUAL BACKGROUND**

For purposes of this motion, the court presumes that the allegations in Plaintiff's complaint are true. Kim Pindak is a male resident of the City of Chicago, which is located in Cook County, Illinois. (Compl. ¶ 4.) Pindak receives public assistance sufficient to pay his monthly room and board at Bryn Mawr Care Nursing Home Facility, where he is a resident. (Compl. ¶¶ 4, 9.) Plaintiff also receives an additional $30.00 per month in public assistance, which he uses for other living

expenses. (Compl. ¶ 9.) Pindak has no other income or savings, and he frequently panhandles (begs for money) to supplement his limited funds. (Compl. ¶ 9.)[1]

One location where Pindak has been known to panhandle is Daley Plaza. (Compl. ¶ 10.) Plaintiff's complaint does not specify how long, or how regularly, Pindak has plied his trade in this location, but it does describe his style: When panhandling, Pindak stands with a cup in his hand and asks passersby, "Can you spare some change?" (Compl. ¶ 8.) Pindak is in no way aggressive and, when he receives a money, he always thanks the donor. (*Id.*)

Plaintiff alleges that his panhandling at Daley Plaza has met with resistance on three specific occasions. (Compl. ¶¶ 11-13.) The first alleged incident occurred on September 23, 2009, when sheriff's officers at the Daley Plaza told Plaintiff, "You can't beg at all [on Daley Plaza]. It is illegal." (Compl. ¶ 13.) The second incident occurred on Oct. 6, 2009, when Plaintiff was escorted off the grounds by law enforcement. (*Id.*)

The third incident allegedly occurred on September 24, 2010. (Compl. ¶ 11.) On that date, sheriff's officers told Plaintiff that panhandling was forbidden on the public property outside the Daley Center in Daley Plaza and told him that he would have to find another area for solicitation. (*Id.*) One of the officers elaborated, explaining that panhandling on Daley Plaza is prohibited, "this year, the following year, and the year after that." (Compl. ¶ 12.) Additionally, the officers warned Plaintiff that if he did not vacate the premises, an officer would "put handcuffs on [him]." (*Id.*) When Pindak asked where it was acceptable for him to panhandle, the officers repeated that there could be "no soliciting on the plaza" and instructed him to go "outside the plaza" to a street corner.

---

[1] Daley Plaza is the courtyard adjacent to the Richard J. Daley Center, the Daley Center houses some 120 court and hearing rooms, the Cook County Law Library, and the offices of the Clerk of the Circuit Court. Daley Plaza occupies the southern half of the block and regularly features civic events that range from farmers' markets to various ethnic festivals. Daley Plaza also serves as the home for an unnamed 50-foot sculpture by Pablo Picasso and has played a cameo role in films such as *The Blues Brothers*, *The Fugitive*, and *Batman Begins*. Wikipedia, Richard J. Daley Center, available at http://en.wikipedia.org/wiki/Daley_Plaza (last visited Aug. 28, 2011).

(*Id.*)

Plaintiff claims that this policy was enforced by other officers on "numerous other occasions." (Compl. ¶ 13.) Because of the "uniformity of the practice [of removing panhandlers from Daley Plaza] by personnel and/or agents of the Sheriff's Department," it is Plaintiff's contention that there is either an "absolute prohibition on all peaceful panhandling" in the area that constitutes a policy and/or practice of the Cook County Sheriff's Department ("Sheriff's Department") or that the Sheriff's Department "has failed to adequately train its police officers to protect the legal rights of panhandlers." (*Id.*)

Plaintiff filed this action, pursuant to 42 U.S.C. § 1983, contending that Defendants have violated the First Amendment, both facially and as applied. Plaintiff seeks declaratory, injunctive, and monetary relief against all Defendants. (Compl. at 5.)

## DISCUSSION

In order to survive a motion to dismiss for failure to state a claim, a plaintiff's complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). In ruling on a 12(b)(6) motion, the court treats all well-pleaded allegations as true, and draws all reasonable inferences in plaintiff's favor. *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009). In considering a 12(b)(6) motion, the issue is adequacy of the complaint, not whether it is meritorious; and thus, while detailed factual allegations are not required, a plaintiff has an obligation to provide "enough facts to state a claim to relief that is plausible on its face" and that "raise[s] a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 555, 127 S. Ct. 1955, 1974, 1965 (2007); *Ashcroft v. Iqbal*, 556 U.S. ___, ___, 129 S. Ct. 1937, 1949 (2009).

As noted, Defendants argue that Plaintiff's complaint should be dismissed for lack of standing; under the *Younger* doctrine; and because the alleged policy is reasonable. (Defs.' Mot. to Dismiss at 1-2.) The court considers these arguments in turn.

3

I.  **Standing to Seek an Injunction**

To establish standing to seek the prospective relief of an injunction, a plaintiff "must show that: (1) [he is] under threat of an actual and imminent injury in fact; (2) there is a causal relation between that injury and the conduct to be enjoined; and (3) it is likely, rather than speculative or hypothetical, that a favorable judicial decision will prevent or redress that injury." *Schirmer v. Nagode*, 621 F.3d 581, 585 (7th Cir. 2010).

Defendants argue that Plaintiff cannot meet the first or third prongs of this test because he (1) is not under threat of imminent injury and (2) has not demonstrated that it is likely that a favorable judicial decision will prevent or redress his alleged injury. (Defs.' Mot. to Dismiss at 5-7.)

A.  **Threat of Imminent Injury**

For standing purposes, a plaintiff's alleged injury must be both (1) concrete and particularized and (2) actual or imminent, not conjectural or hypothetical. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136 (1992). Defendants claim that Plaintiff has no such injury because he has not actually been prosecuted under the alleged policy—rather, Plaintiff has solely been given a verbal order to take his panhndling activity elsewhere. (Defs.' Mot. to Dismiss at 6.) Further, Defendants contend that there is no actual and imminent injury because the notion that he will be prosecuted is highly speculative and would require an "unlikely chain of events." Thus, Defendants assert, "Plaintiff's complaint, at best, can be read to establish that he *may* be prosecuted *if* he decides to panhandle on Daley Plaza (again) *and* if a law enforcement or private security officer decides to investigate and arrest Plaintiff." (*Id.*)

Defendants are correct that at the time of filing his complaint, Plaintiff had not been prosecuted under the alleged policy. A person need not risk arrest before bringing a pre-enforcement challenge under the First Amendment, however. *Holder v. Humanitarian Law Project*, 561 U.S. ___, 130 S. Ct. 2705, 2717 (2010). The plaintiffs in *Holder* sought to provide training, expert advice, service, and personnel assistance to two organizations deemed by the Secretary of

State to be "foreign terrorist organizations." 130 S.Ct. at 2713. In concluding that plaintiffs had standing to challenge a criminal ban on providing material support to such organizations, the Court pointed out that the government did not challenge plaintiffs' assertions that they would be prosecuted if they provided such support, as they had already done and proposed to continue doing. *Id.* at 2717. In the case before this court, Defendants have suggested that Plaintiff's potential arrest would require an "unlikely chain of events," but similarly have not asserted that Pindak will not be prosecuted for panhandling. Plaintiff has pleaded three specific incidents wherein he was either escorted off Daley Plaza, reminded that panhandling in that location is illegal, or warned that he would be "put [in] handcuffs" if he remained there. (Compl. ¶¶ 12,13.) Assuming the truth of those allegations, the court concludes that the possibility that Plaintiff will be arrested and charged is not highly speculative.

In addition, Plaintiff has alleged various injuries distinct from actual arrest. (Compl. ¶ 20.) He asserts that the alleged policy against panhandling has "deterred [him] from exercising his Constitutionally-protected free speech rights." (Compl. ¶ 19.) As a result, Plaintiff claims he suffered monetary damages (lost panhandling income), and "emotional trauma, physical discomfort, anguish, humiliation, and insult." (Compl. ¶ 20.) Standing requires that plaintiffs "demonstrate a 'personal stake in the outcome' in order to 'assure that concrete adverseness which sharpens the presentation of issues' necessary for the proper resolution of constitutional questions." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101, 103 S. Ct. 1660, 1665 (1983) (quoting *Baker v. Carr*, 369 U.S. 186, 204, 82 S. Ct. 691, 703 (1962)). Plaintiff here has made such a showing; as an individual who regularly panhandles at Daley Plaza, he is a suitable party to vigorously challenge an alleged policy banning such activity.

### B.     Favorable Court Action will Redress Injury

Defendants next contend that Plaintiff has not demonstrated that it is likely that a favorable judicial decision will prevent or redress his alleged injury. (Defs.' Mot. to Dismiss at 7.) As the court

reads their submissions, however, Defendants have not explained why a favorable decision would not redress Plaintiff's injury. Instead, Defendants attempt to explain why it is unlikely that a favorable decision would be reached by this court. (*Id.*) In making this latter argument, Defendants cite *Lujan* for the proposition that "a plaintiff cannot rely on mere allegations but must support each element of standing by specific facts via affidavits or other evidence." (*Id.*, citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 2137 (1992). Significantly, however, this passage from *Lujan* actually refers to the requirements for a plaintiff's response to a summary judgment motion. Given the stage of the case currently under consideration, a more relevant passage from *Lujan* is the sentence that immediately precedes the language Defendants have quoted: "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we [p]resum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Id.* at 561, 112 S.Ct. at 2137 (internal quotations omitted). In short, Defendant's argument here is not appropriate for a motion to dismiss.

Plaintiff's response brief and Defendants' reply focus more directly on the contention that Plaintiff has not demonstrated that it is likely that a favorable judicial decision would prevent or redress his alleged injury. On this score, the parties extensively examine *Schirmer v. Nagode*, a recent case in which the Seventh Circuit determined that the plaintiffs lacked standing to challenge a section of Chicago's Municipal Code. 621 F.3d 581 (7th Cir. 2010). The ordinance at issue in *Schirmer*, Chicago Municipal Code § 8-4-010(d), makes it a crime for a person to fail to disperse from a group when ordered to do so by a police officer while others are engaging in disorderly conduct in the vicinity.[2] *Id.* at 583. In 2006, a number of peaceful demonstrators at Taste of

---

[2] The ordinance reads, in relevant part, as follows: "A person commits disorderly conduct when he knowingly . . . (d) Fails to obey a lawful order of dispersal by a person known by him to be a peace officer under circumstances where three or more persons are committing acts of disorderly conduct in the immediate vicinity, which acts are likely to cause substantial harm or serious inconvenience, annoyance or alarm . . . ." Chicago Municipal Code § 8-4-010(d), quoted
(continued...)

Chicago were directed to leave the vicinity of a military recruitment booth and to protest in a designated protest zone. *Id.* Plaintiffs refused to relocate or disperse, and were charged with disorderly conduct in violation of § 8-4-010(d). *Id.* In reviewing the district court's grant of summary judgment and entry of a permanent injunction in favor of the plaintiffs, *Schirmer* looked closely at the question of standing–particularly, whether plaintiffs had established that an "injunction will actually prevent an injury that these plaintiffs reasonably fear they will suffer." *Id.* at 585. The Seventh Circuit concluded that such a result was not sufficiently probable, as the arrests were patently not supported by probable cause. The arrests instead "appear to have been baseless, and for that reason, the . . . injunction against enforcement of the provision is unlikely to prevent any injury to these plaintiffs." *Id.* That is, the arrest and prosecution of the *Schirmer* plaintiffs was an anomaly—an "isolated misuse," not something likely to occur again. *Id.* at 588.

In *Schirmer*, a perfect storm of events—including the misapplication of the law—led to the plaintiffs' prosecution, and future prosecution was deemed highly unlikely. In the case presently before this court, Defendants contend that any enforcement of the policy against Plaintiff "can only be construed as [an] 'isolated misuse' of the alleged policy and does not present sufficient evidence for injunctive relief." (Def.'s Reply [26] at 2.)[3] This court disagrees. Plaintiff has noted three specific dates on which he was either escorted off Daley Plaza, warned that panhandling in that particular location is illegal, or threatened with handcuffs if he remained in that location. (Compl. ¶¶ 12, 13.) Additionally, Plaintiff has pleaded that he is "is in fear of arrest and deterred from exercising his Constitutionally-protected free speech rights." (Compl. ¶ 19.) Any arrest or relocation of Plaintiff for panhandling on Daley Plaza would not be a "misuse"—isolated or

---

[2](...continued)
in *Schirmer*, 621 F.3d at 582-3.

[3] Although Defendants hint elsewhere that no such policy exists, this argument appears to suggest that, at least in some form, it does.

otherwise—of the alleged policy; rather, it would be the specific intended use of the alleged policy.

For these reasons, Plaintiff has established standing.

**II.     *Younger* Abstention**

*Younger v. Harris* requires that a federal court abstain from exercising jurisdiction over a federal constitutional claim that aims to interfere with or interrupt an ongoing state proceeding. *FreeEats.com, Inc. v. State of Indiana*, 502 F.3d 590, 595 (7th Cir. 2007). *Younger* abstention is warranted where (1) state proceedings are ongoing; (2) the proceedings implicate important state interests; and (3) the state proceeding presents an adequate opportunity to raise constitutional challenges. *Trust & Inv. Advisers, Inc. v. Hogsett*, 43 F.3d 290, 295 (7th Cir.1994).

There is no ongoing state proceeding in the case before this court. Defendant nevertheless contends that abstention is warranted (Defs.' Mot. to Dismiss at 7-8) in light of the general principles behind *Younger* abstention—in particular, the Seventh Circuit's recognition that "state courts are just as able to enforce federal constitutional rights as federal courts." *Brunken v. Lance*, 807 F.2d 1325, 1331 (7th Cir. 1986). This court, of course, has no quarrel with this principle, but it is not relevant when, as here, there is no state court currently addressing the specific matter.

Defendants suggest that in attempting to enjoin a "blanket prohibition" against panhandling in Daley Plaza, "Plaintiff is actually seeking to enjoin enforcement of *any* panhandling or related statutes or ordinances, which would be, by its very nature, an injunction against ongoing and future prosecutions in State court for such violations." (Defs.' Mot. to Dismiss at 8 (emphasis added).) Respectfully, for two reasons, the court is not moved by Defendants' invocation of *Younger* in this context. First, Plaintiff is not attempting to enjoin enforcement of "*any* panhandling or related statutes or ordinances"; rather, he is attempting to enjoin a single, particular alleged policy: the alleged policy against panhandling on Daley Plaza. (Compl. ¶ 17.) Secondly, the possible existence of state court prosecutions not involving Plaintiff PIndak is irrelevant. Were Defendant's argument here accepted, no plaintiff would ever be able to challenge the validity of *any* law, for fear

of throwing a wrench into ongoing prosecutions of unrelated parties for unrelated offenses.

"*Younger* abstention is appropriate only when there is an action in state court against the federal plaintiff and the state is seeking to enforce the contested law in that proceeding." *Forty One News, Inc. v. County of Lake*, 491 F.3d 662, 665 (7th Cir. 2007). Because there is no ongoing state proceeding involving Plaintiff, *Younger* abstention is inapplicable here.

**Time, Place, and Manner Restrictions**

Finally, Defendants urge dismissal on the basis that a government may "enforce regulations of the time, place, and manner of expression which are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *Perry Education Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 45, 103 S. Ct. 948, 955 (1983). A law that does not ban all panhandling may be understood as a time, place, or manner regulation. *Gresham v. Peterson*, 225 F.3d 899, 905 (7th Cir. 2000). Defendants urge that the policy challenged in this case constitutes a valid time, place, and manner constraint, and that enforcement of such a policy does not violate the First Amendment. (Defs.' Mot. to Dismiss at 9, n.11.)

The court declines to address this argument. Whether the alleged policy is a valid time, place, and manner restriction raises factual issues that go well beyond the four corners of Plaintiff's complaint. At this point, all that the court has before it are Plaintiff's assertions that Defendants have adopted "an official policy . . . prohibiting all panhandling activity . . . in Daley Plaza" (Compl. ¶ 2); the complaint provides no information concerning the purposes, goals, and scope of the alleged policy. Without such information, the court is unable to assess Defendants' argument. In *Gresham v. Peterson*, the Seventh Circuit considered some of the complexities involved in determining whether a prohibition is content-based or content-neutral, ultimately noting that "the inquiry into content neutrality in the context of time, place or manner restrictions turns on the government's justification for the regulation." 225 F.3d at 905-906. At this stage, the court has no

information concerning the government's proffered justification for the panhandling ban, and is not free to consider those arguments Defendants have offered on this score. (See Defs.' Mot. To Dismiss at 9-10.) If the policy is aimed only at particular types of speech, it may well be deemed content-based and presumptively invalid, *see City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 434, 122 S. Ct. 1728, 1733-34 (2002). If the policy is, instead, content-neutral, the court might still require evidence that the challenged restriction is "are narrowly tailored to serve a significant government interest" and "leave open ample alternative channels of communication." *Perry Education Assn.*, 460 U.S. at 45, 103 S. Ct. at 955. Proper consideration of these questions requires a development of the record that goes well beyond Plaintiff's complaint.

## CONCLUSION

Defendants' motion to dismiss [14] is denied.

ENTER:

Dated: September 14, 2011

_____
REBECCA R. PALLMEYER
United States District Judge