IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KIM PINDAK, | ) | |
| | ) | |
| Plaintiff, | ) | 10 C 6237 |
| | ) | |
| v. | ) | Judge Pallmeyer |
| | ) | Magistrate Judge Kim |
| COOK COUNTY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S CONSOLIDATED RESPONSE TO DEFENDANTS' MOTIONS
TO DISMISS PLAINTIFF'S FIFTH AMENDED COMPLAINT**

**I.      Introduction**

This is a First Amendment case arising from the repeated violation of Plaintiff's right to peacefully panhandle in Daley Plaza. Plaintiff has sought to exercise his protected right to peacefully ask passersby for change on numerous occasions over the course of at least three years. On each occasion, he has been told that panhandling is not permitted anywhere on the Plaza and has been escorted off the Plaza or threatened with arrest.

Plaintiff alleges in his Complaint that the Defendants have enforced an official policy prohibiting panhandling in the Plaza in violation of panhandlers' legal rights. Plaintiff seeks a declaratory judgment that Defendants' prohibition on peaceful panhandling violates his First Amendment rights, injunctive relief to prohibit Defendants from enforcing such a prohibition in the future, and money damages.

**II.     The Defendants**

Two governmental entities share responsibility for policing the Plaza: Cook County and the Public Building Commission of the City of Chicago. Cook County sheriff's deputies who work under Defendant Sheriff Dart are stationed outside the Daley Center on a daily basis and patrol the Plaza. Cook County and Thomas Dart are referred to herein as "the County Defendants." The Public Building Commission ("PBC"), which does not have its own police force, contracts out security operations to a property management firm, MB Real Estate Services, LLC ("MBRE"). MBRE in turn has a contract with Securitas Security Services USA Inc. ("Securitas"), which provides

uniformed security guards who police the Plaza along with sheriff's deputies. On numerous occasions, both sheriff's deputies and private security guards have enforced the no-panhandling policy against Plaintiff.

### III. Litigation History, Plaintiffs' Complaint and Defendants' Motions

Plaintiff initially filed this case in September 2010 naming only the Cook County Defendants. At that time, Plaintiff was not aware of PBC and its subcontractors' role in policing the Plaza. The Cook County Defendants filed a motion to dismiss in November 2010, arguing that Plaintiff lacked standing, that Younger abstention called for dismissal, and that the ban on panhandling in the Plaza was a valid time, place and manner restriction. That motion was denied in its entirety in September 2011. In discovery, Plaintiff learned about PBC, MBRE and Securitas and amended the Complaint to add these Defendants.[1]

Plaintiff's present Complaint consists of five counts, all of which address violations of Plaintiff's First Amendment rights: Count I is a Monell claim against PBC, Securitas and MBRE. Count II is directed against Antonio Kelly and Deron Truman, private security personnel employed by Securitas and MBRE who enforced the no-panhandling policy against Plaintiff in a videotaped incident that occurred in September 2010. Count III is a Monell claim against Cook County and Sheriff Thomas Dart. Count IV names two Sheriff's deputies whose identities are currently unknown (but of whom Plaintiff has photographs) who enforced the no-panhandling policy against Plaintiff in another incident in May 2012. Count V seeks *respondeat superior* liability against MBRE/ Securitas for the actions of Truman and Kelly.[2]

Defendants PBC, MBRE, Securitas, and Cook County have each filed a motion to dismiss, challenging the adequacy of Plaintiff's Complaint.[3] PBC argues that it is not liable for four reasons: (1) PBC's written policies permit panhandling; (2) PBC does not have an unstated no-panhandling policy; (3) Plaintiff has not alleged sufficient facts to support Monell liability for failure to train; and (4) Plaintiff has failed to state sufficient

---

[1] Counsel for the County Defendants represented that sheriff's deputies do not police the Plaza and
[2] Upon review, Plaintiff voluntarily withdraws his *respondeat superior* claim.
[3] The pending motions do not challenge Counts II and IV, which are directed against individual Defendants for violation of Plaintiff's First Amendment rights.

grounds to obtain a preliminary injunction. The County Defendants argue that: (1) Plaintiff has not alleged sufficient facts to support a "widespread practice" Monell claim; (2) Plaintiff has pled insufficient allegations in support of a failure to train theory; and (3) Plaintiff has failed to plead sufficient grounds to obtain a preliminary injunction. MBRE and Securitas both argue that their security officers are private individuals not acting "under color of law" and therefore cannot be held liable pursuant to § 1983. This is a consolidated response to all four Defendants' motions. For the reasons stated below, these motions should be denied in their entirety.

**IV.	Motion to Dismiss Standard**

"A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint, not the merits of the case." Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). In evaluating a motion to dismiss, the court thus accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007) (citations omitted). Judges are not to make findings of fact at the pleading stage. Richards v. Mitcheff, ____ F.3d ____, 2012 WL 3217627 *2 (7th Cir. August 9, 2012). To provide the defendant with "fair notice of what the claim is and the grounds upon which it rests," the complaint must provide a short and plain statement of the claim showing that the pleader is entitled to relief. Twombly at 555; Fed. R. Civ. P. 8(a)(2).

A Complaint's allegations must plausibly suggest that the plaintiff has a right to relief and raise that possibility above the "speculative level." Twombly, 550 U.S. at 555. "Making the plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" McCauley v. City of Chicago, 671 F.3d 611, 616 (7th Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). The plausibility standard requires a plaintiff to "provid[e] some specific facts" to support the legal claims asserted in the complaint. McCauley at 616 (citations omitted). The precise degree of specificity of such facts is "not easily quantified," but "the plaintiff must give enough details about the subject-matter of the case to present a story that holds together." Id. (citations omitted).

3

V. **Plaintiff has a Protected First Amendment Right to Peacefully Panhandle in Daley Plaza, a Traditional Public Forum**

This Complaint challenges a widespread and well-established policy of barring all panhandling activity in Daley Plaza. The policy is unconstitutional because peaceful panhandling is protected speech under the First Amendment. Schaumburg v. Citizens for a Better Environment, 444 U.S. 620, 632 (1980). See also, Gresham v. Peterson, 225 F.3d 899, 904 (7th Cir. 2000) ("While some communities might wish all solicitors, beggars and advocates of various causes be vanished from the streets, the First Amendment guarantees their right to be there, deliver their pitch and ask for support."). Daley Plaza is a traditional public forum in which the state may not implement "content based" restrictions on First Amendment activities absent a compelling government interest. See, Grutzmacher v. Public Bldg. Com'n of Chicago, 700 F. Supp. 1497, 1500 (N.D.Ill. 1988) ("The Plaza has always been and obviously was intended to be a superior type of traditional public forum within the meaning of First Amendment jurisprudence.")

VI. **Monell Liability**

The Complaint seeks to hold PBC, MBRE, Securitas and the County Defendants liable for the repeated violation of Plaintiff's First Amendment rights pursuant to Monell v. Department of Social Services, 436 U.S. 658 (1978). There are three ways to establish Monell liability under section 1983: "(1) the City had an express policy that, when enforced, causes a constitutional deprivation; (2) the City had widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage within the force of law; or (3) plaintiff's constitutional injury was caused by a person with final policymaking authority." McCormick v. Chicago, 230 F. 3d 319, 324 (7th Cir. 2000).

Plaintiff's Monell claims (Counts I and III) are premised on the first and second of these grounds—e.g., an express policy claim and a widespread practice claim that says the Defendants knew or should have known about the unconstitutional ban on panhandling on the Plaza because it was occurring routinely and was being carried out by numerous different officers over the course of more than three years. Complaint, ¶¶ 16 – 29 (describing five incidents between 2009 and 2012 during which security personnel and

sheriffs interfered with Plaintiff's First Amendment rights by informing Plaintiff that panhandling was not permitted there.)

  A.  **Express Policy: PBC**

PBC argues that Plaintiff's Monell claim should be dismissed because PBC does not have an official written policy banning panhandling. PBC Brief, Dkt. 85, 5. In support of this argument, PBC attaches its written Plaza Regulations, which do not expressly prohibit panhandling and permit "private discussions or meetings" between individuals in the Plaza. PBC's motion states that the existence of this policy "demonstrate[s] that there is no panhandling prohibition that the municipality has officially sanctioned or ordered." Id. at 5.

PBC's argument fails for three reasons: (1) the regulations are vague and there is a question of fact regarding their meaning. At the motion to dismiss stage, PBC's interpretation should not be credited; (2) the mere existence of a policy that appears to be constitutionally sound on its face is not dispositive if it is applied unconstitutionally in the field, and; (3) PBC's written policy is constitutionally infirm because its vagueness creates a grave risk that officers will misinterpret it to prohibit panhandling.

    1.  **The Parties' Interpretation Dispute Calls for Discovery.**

The PBC regulations are vague and open to interpretation. While § I states that the regulations do not apply to "private discussions," § VIII prohibits any activities that "unreasonably interfere with other's use of the premises." Dkt. 85-1, p.13. The regulations do not define "unreasonable interference."

PBC's attorney interprets the regulations to mean that panhandling is permitted under the "private discussions" exception. However, it is certainly plausible—indeed, likely—that a security guard may interpret the prohibition on "unreasonable interference" to mean that he has authority to clear the Plaza of anyone deemed unpleasant, inconvenient, or unsightly to other members of the public. As described in more detail below, the pre-discovery evidence certainly seems to support the notion that this is how the guards employed by PBC (or its agents) on the Plaza have interpreted the regulations at issue.

The bottom line is this: a dispute exists as to the meaning of these regulations. And where the language of a written instrument is reasonably susceptible to differing

5

interpretations, its meaning is a question of fact for the jury. See, Dawson v. General Motors Corp., 977 F.2d 369, 373 (7th Cir. 1992) ("If the language of an alleged contract is ambiguous regarding the parties' intent, the interpretation of the language is a question of fact which a court cannot properly determine on a motion to dismiss."); Curia v. Nelson, 587 F.3d 824 (7th Cir. 2009)(same).

### 2. Given the Vague Language of the Regulations, it is Plausible that Security Personnel Interpret the Regulations to Prohibit Panhandling.

Evidence set forth in the Complaint lends credence to Plaintiff's interpretation of PBC's vague regulations. Security personnel explicitly told Plaintiff that it is the official policy to bar panhandling on the Plaza. For instance, in a videotaped incident that occurred in September 2010, Securitas employees Kelly and Truman approached Plaintiff while he was peacefully panhandling on the Plaza and told him that he had to leave. Plaintiff stated that last year security told him that begging was not allowed on the Plaza. Defendant Kelly responded: "It's the same this year, the following year, and the year after that," that if he didn't get off the premises he was "going to put handcuffs on [him]." Complaint ¶ 24. Defendant Truman told Plaintiff "you can't do that here" because "there is no soliciting on the plaza" and that he had to go "outside the plaza" to the street corner to panhandle. Complaint ¶ 25. On other occasions security personnel have physically escorted Plaintiff from the premises and told Plaintiff that panhandling on the Plaza is "illegal." Complaint ¶¶ 27 –29. Given the actions and statements of the security personnel working in the Plaza, it is far from implausible to say that they interpret the regulations to bar panhandling.

Even crediting Defendants' reading of the policy—that panhandling is allowed as a "private discussion"—the mere existence of a written regulation that purports to permit panhandling is not dispositive. What matters is not the idealism in the books, but rather the practice in the field. Palmer v. Chicago, 652 F.Supp 1067, 1070 (N.D.Ill. 1983). Where a municipality's official policy is constitutional, but it causes its employees to apply it unconstitutionally, such that the unconstitutional application might itself be considered policy, the municipality is liable for its employee's unconstitutional acts. For example, liability can be imposed where the city is aware that its policy is unconstitutionally applied by inadequately trained employees, but still chooses not to

train them. Amnesty America v. West Hartford, 361 F.3d 115, 129 (2nd Cir 2004). See also, City of Canton v. Harris, 489 U.S. 378, 387 (1989); Fiacco v. City of Rensselaer, 783 F.2d 319, 226-27 (2nd Cir. 1986) (practice of using excessive force can be the basis for municipal liability even though the city's use of force policy itself is constitutional.)

Here, the evidence is that whatever written policy Defendants have on the books, the reality in the field is that security personnel are banning panhandlers from the Plaza routinely. Complaint ¶¶ 16 –29. And the evidence is that they are doing so because they understand it to be PBC's policy to prohibit panhandling on the Plaza. Complaint ¶¶ 23–29 (describing videotaped incident in which Defendant security personnel tell Plaintiff that begging is prohibited on the Plaza "this year, next year and the year after that," and separate incident where Plaintiff was informed panhandling on the Plaza is "illegal.")

Regardless of the lawyers' interpretation of the PBC regulations, there is certainly plausible evidence that the regulations are being applied in the field as an absolute prohibition on panhandling on the Plaza.

### 3. PBC's Policy is Constitutionally Defective because it is Unduly Vague.

It is possible that PBC's regulations were intended to permit panhandling, but were poorly drafted (i.e. banning "unreasonable interference with other's use of the Plaza" without defining that term), thereby leading to a grave risk of their being misinterpreted. Good intentions, however, do not save PBC from Monell liability, since a municipal policy can be constitutionally infirm because it is unduly vague and/or ambiguous, thereby leading to "a grave risk" of constitutional violations. Palmer v. Chicago, 562 F.Supp. 1067, 1076 (N.D. Ill. 1983) ("[Chicago Police] Department's practices before this action was instituted … unquestionably created a grave risk of non-disclosure of exculpatory materials and hence the violation of constitutional rights.")[4]

### B. Express Policy: County Defendants

For their part, the County Defendants do not even mention the first method of establishing Monell liability; rather they direct their motion only at the "widespread practice" aspect of Plaintiff's Monell claims. It is not surprising that the County

---

[4] In the case of panhandlers' legal rights, the risk is misinterpretation is particularly high because there is so much bias against this population of people. See, § IV, infra. Therefore the need for clear and precise rules regarding their rights is exceptionally acute.

7

Defendants seek to sidestep this issue, given that they lack any policies whatsoever regarding panhandling or First Amendment activities in the Plaza. Complaint ¶ 36.[5]

Fact is, the County's failure to adopt any policies to protect citizens' fundamental First Amendment rights is in and of itself a basis for Monell liability against the County. Acts of omission, as well as commission, may serve as the predicate for a finding of unconstitutional policy or custom. See, Timberlake by Timberlake v. Benton, 786 F. Supp. 676, 696 (M.D. Tenn. 1992) ("A local governing body does not shield itself from liability by acting through omission. Thus, when a city provides no guidance to its officers regarding such intrusive actions as strip searches, it must face the consequences of its inaction by being subject to suit."); Chew v. Gates, 27 F. 3d 1432, 1445 (9th Cir. 1994) ("a failure to adopt a departmental policy … evidences a deliberate indifference to constitutional rights. Under such circumstances, a jury could, and should, find that Chew's injury was caused by the city's failure to engage in any oversight whatsoever of an important departmental practice.")

Particularly, where, as here, violations of Plaintiff's rights were ongoing and the need for a policy was evident, failure to act to give officers adequate guidance is a basis to impose liability on the County Defendants. St. Louis v. Praprotnik, 485 U.S. 112, 127, 108 S.Ct. 915, 926, 99 L.Ed.2d 107 (1988) (A city's continued failure to prevent improper police conduct when it has knowledge of that conduct is "precisely the type of informal policy or custom that is actionable under section 1983.")

### C. Widespread Practice

PBC and the County Defendants contend that Plaintiff's allegations are insufficient to establish a "widespread practice" Monell claim. Dart contends that the entire case against the County is premised on a "single incident." County Brief, Dkt. 91-6; and PBC claims the case is premised on "a few conversations and one incident where the Plaintiff was allegedly escorted off the Plaza." PBC Brief, Dkt. 85-7. Both contend

---

[5] In the course of litigating this matter, prior to amending the Complaint to add PBC, MBRE and Securitas as Defendants, Plaintiff deposed the County's designated Rule 30(b)(6) witness regarding the County's policies about panhandling, First Assistant Chief Deputy Kevin Connolly. Connolly testified as follows: "Q: Am I correct in my understanding that the Sheriff's Department has no policy, written or unwritten, regarding the permissibility of First Amendment activities in the Daley Plaza? A: That is correct. Q: So there's no written or unwritten policy regarding panhandling at Daley Plaza? A. Correct." Ex. 1, Dep of Connolly, p. 26-27.

8

that Plaintiff has not alleged enough incidents to establish a "widespread practice" pursuant to Monell.

This argument fails for the following reasons: (1) Defendants misstate the pleadings. Plaintiff has pled sufficient factual allegations to establish a plausible widespread practice claim; (2) it is inappropriate to speculate about Plaintiff's proof at the pleading stage without the benefit of discovery; and (3) the reason there are only five incidents alleged in the Complaint is that the Defendants have so uniformly enforced their unconstitutional ban on panhandling that individuals no longer seek to exercise their First Amendment rights for fear of arrest.

    **1.**    **Plaintiff has Pled Sufficient Allegations to Support a Plausible Widespread Practice Claim**

There is no hard and fast rule as to "what level of frequency of the challenged conduct evidences a custom." Cosby v. Ward, 843 F.2d 967, 983 (7th Cir. 1988); Davis v. Carter 452 F.3d 686 (7th Cir. 2005) ("a plaintiff need not present a full panoply of statistical evidence showing the entire gamut of a defendant's past bad acts to establish a widespread practice or custom. Instead, it is enough that a plaintiff present competent evidence tending to show a general pattern of repeated behavior (i.e., something greater than a mere isolated event)). Under certain circumstances, "a single action taken by a municipality is sufficient to expose it to liability." Amnesty America v. Town of West Hartford, 361 F.3d 113 (2d Cir. 2004).

In the present case, Plaintiff has met the threshold burden. The five incidents alleged in Plaintiffs' complaint are described with specificity. See, Complaint ¶ 28 (describing September 2009 incident in which Plaintiff was removed from the Plaza); Id. ¶ 29 (describing October 2009 incident in which Plaintiff was told panhandling on the Plaza was "illegal"); Id. ¶¶ 23–26 (describing September 2010 incident in which private security told Plaintiff panhandling was never permitted anywhere on the Plaza and removed Plaintiff from the premises); Id. ¶¶ 16–18 (describing two May 2012 encounters with sheriffs deputies who informed Plaintiff that no one is permitted to panhandle on the Plaza); Id. ¶¶ 15, 27 (stating that the same policy has been enforced against Plaintiff on numerous other occasions by security personnel or deputies.)

9

Moreover, there is nothing conclusory about Plaintiff's policy allegations. The Complaint alleges a factual basis for the belief that a policy exists—the Defendants' own employees have said so and on video and audiotape. See, e.g., Complaint ¶ 25 (describing videotaped incident in which security guard states there is no panhandling permitted on the Plaza "this year, the following year, and the year after that."); Id. ¶ 26 (videotaped statement: "there is no soliciting on the plaza.")

### 2. Plaintiff Should be Permitted to Develop More Evidence to Support his Widespread Practice Claim in Discovery

At the pleading stage, Plaintiff need not have all of the evidence that will support his claim. Rather, he need only set forth his allegations with sufficient particularity to make out a plausible claim that the Defendant is engaged in the challenged practice. Fuery v. City of Chicago, 07 C 5428, 2009 U.S. Dist. LEXIS 39351 at * 13–14 (N.D. Ill. May 6, 2009) (Hibbler, J.) ("The City first argues that Plaintiffs have not properly pleaded a widespread custom and practice of covering up misconduct by its police officers simply because Plaintiffs have identified only six lawsuits in a 24 year period. … Notice pleading, however, does not require the Plaintiffs to lay out all of their proofs. It requires only that they make sufficient allegations to raise their right to relief above the level of sheer speculation.")

Plaintiff expects to develop evidence in discovery that the five incidents in the Complaint are not the only times people have been subjected to the unconstitutional policy—far from it. Having set forth his claims with sufficient detail to permit a plausible inference that the Defendants have a policy banning panhandling on the Plaza, Plaintiff should be permitted to conduct discovery to learn of additional incidents that will provide support for his claim at trial. See, Fuery at *8 ("The City would have the Court weigh the Plaintiffs' evidence on the basis of their allegations, permitting them no opportunity to flesh out their theory through participation in discovery. … The Court declines the City's invitation to speculate about what the Plaintiffs may or may not be able to prove at a later point in the litigation.")

### 3. Defendants Should not be Permitted to Evade Liability because their Policy was Effective in Preventing Citizens from Exercising their First Amendment Rights

But even if there are not hundreds (or even dozens) of incidents of individuals' First Amendment rights being interfered with on the Plaza, there's good reason for this. The Defendants have been enforcing their no-panhandling policy on the Plaza for years, and during this same period of time security personnel and sheriffs have threatened to arrest people who panhandle on the Plaza.[6] See, Complaint ¶ 24 (videotape of Defendant telling Plaintiff that if he didn't get off the premises he was "going to put handcuffs on [him].") It would be paradoxical if the Defendants could escape liability for their policy simply because its aggressive enforcement effectively deterred individuals from even attempting to exercise their First Amendment rights for fear of being arrested. The threat of arrest is a powerful disincentive.

### D. Knowledge can be Imputed to Defendants

Next, PBC contends the Complaint should be dismissed because it does not "allege that PBC was even aware of the statements made by the security officers or the decision of the security officers to escort the [Plaintiff] off the Plaza." PBC Brief, Dkt. 85-8. Likewise, the County Defendants argue that Plaintiff has not sufficiently alleged knowledge on the part of Dart. County Brief, Dkt. 91-7.

These arguments misstate the applicable law. In a widespread practice claim, awareness and indifference can be inferred and constructive knowledge imputed based on the existence of the widespread practice itself, if the practice is pervasive and persistent and the municipality fails to remedy it. By establishing a "widespread practice that … is so permanent and well settled as to constitute a custom or usage with the force of law," constructive knowledge of the practice is imputed to the policymaker. Billings v. Madison Metropolitan School Dist., 259 F.3d 807, 818 (7th Cir. 2001) ("In assessing whether such a pervasive custom or policy exists, we have required the plaintiff to present facts showing that policymakers knew of the conduct or that the conduct was so widespread that they should have known."); Calusinski v. Krueger, 24 F.3d 931, 936 (7th

---

[6] The County Defendants deposed Plaintiff in this matter. Plaintiff testified that in 2009 a uniformed Sheriff's deputy carried through on his threat to put Plaintiff in handcuffs for panhandling on the Plaza and detained Plaintiff in the basement of the Daley Center.

11

Cir.1994) ("Holding a municipality liable for its official policies or custom and usage is predicated on the theory that it knew or should have known about the alleged unconstitutional conduct"); Thompson v. City of Los Angeles, 885 F.2d 1439, 1443-44 (9th Cir. 1989) (If a showing of a "permanent and well-settled" practice is made, "a local government may be liable for its custom irrespective of whether official policymakers had actual knowledge of the practice at issue."); Allen v. Chicago, 828 F.Supp. 543, 561 (N.D. Ill. 1993) ("'Custom and usage' by municipal employees and agents may be attributed to a municipality when the duration and frequency of the practices are sufficiently widespread so as to give rise to an inference of actual or constructive knowledge on the part of the municipality."); Limes-Miller v. Chicago, 773 F.Supp. 1130, 1136 (N.D. Ill. 1991) ("practice must be 'persistent and widespread' to impute constructive knowledge to City policymakers"); Jones v. Chicago, 856 F.2d 985, 995-96 (7th Cir. 1998) ("As the custom was department-wide and of long standing (amounting to substantial prior knowledge), the jury was entitled to conclude that it had been consciously approved at the highest policy-making level for decisions involving the police department").

Plaintiffs' Complaint includes numerous allegations that make an inference of knowledge plausible, including the following: (1) the practice has been going on for more than three years, (Complaint ¶¶ 28, 29); (2) Plaintiff has personally been subject to the practice on at least five occasions, (Id. ¶¶ 15-29); and (3) security personnel describe the ban on panhandling in terms that suggest it has the force of law behind it (Id. ¶¶ 21, 25, 26, 29) (describing panhandling or solicitation as "illegal" and describing the prohibition on panhandling as absolute: "no one is permitted to panhandle anywhere on the Plaza").

Prior litigation provides another basis from which a trier of fact could find Defendants had notice of the widespread practice of banning panhandlers from the Plaza. The County Defendants have been on notice of this ongoing practice since this lawsuit was initially filed in 2010. Id. ¶ 34. To date, the County Defendants have done nothing to remedy the ongoing deprivation of panhandlers' First Amendment rights and still have no policies regarding expressive activities in the Plaza, despite the obvious need for them. Complaint ¶¶ 35, 36.[7] Likewise, MBRE has knowledge of the need for policies regarding

---

[7] Counsel for the County Defendants also argues that the filing of this lawsuit against Dart and the

the legal rights of panhandlers based a previous case, Pindak v. City of Chicago, et al., 06 C 5679 (N.D. Ill., Pallmeyer, J.), which involved the same concerns present in this case—the rights of panhandlers to exercise their First Amendment rights on a public forum, one it manages on behalf of a municipality.[8]

Ultimately, it is a factual issue whether the duration and frequency of the unconstitutional practices being challenged here are so widespread and pervasive for constructive knowledge to be inferred. That depends on the body of admissible evidence gathered during the discovery process. At this point, with Plaintiff's having set forth allegations that make such an inference plausible, there is no basis for dismissal of the Monell widespread-practice claim.

### E. Failure to Train

PBC and the County Defendants also argue that Plaintiff's Complaint fails to allege sufficient facts to support a failure to train theory. The crux of their arguments is that Plaintiff has not alleged enough details regarding the Defendants' training. PBC Brief, Dkt. 85-8. County Brief, 91-7-8. To the contrary, Plaintiff's Complaint contains more than adequate factual detail from which to draw a plausible conclusion that Defendants have failed to train their employees regarding panhandlers' legal rights.

Municipalities are accountable under Monell when their failure to train amounts to deliberate indifference. Gable v. City of Chicago, 296 F.3d 531, 538 n.3 (7th Cir. 2002) (claim established by showing that a failure to train was deliberately indifferent). Deliberate indifference in this context requires proof that the Defendants disregarded the "known or obvious consequence" that an omission in their training program would cause employees to violate citizens' constitutional rights. Bryan County v. Brown, 520 U.S. 397, 410 (1997); See also, Canton v. Harris, 489 U.S. 378, 390 (1989) ("in light of the duties assigned to specific officers or employees the need for more or different training is

---

County in 2010 should not be considered evidence that the County Defendants had knowledge of the ongoing unconstitutional ban on panhandling because "Plaintiff dismissed with prejudice his complaint against the Sheriff and Cook County on May 3, 2012." County Brief, Dkt. 91-6. The argument is disingenuous. As described in Plaintiff's motion to vacate this dismissal (Dkt. 58) this dismissal was premised on Defendants misrepresentation of the sheriff department's role in policing the plaza.

[8] This suit is not referenced in Plaintiffs' Complaint, but the Court may take judicial notice of it because it is part of the public record. U.S. v. Wood, 925 F.2d 1580, 1581-82 (7th Cir. 1991) (The Court may take judicial notice of documents that are part of the public record).

so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury.") In this case, Plaintiff has set forth a plausible claim that the need for training regarding the rights of panhandlers is obvious and the Defendants' failure to implement any training is deliberately indifferent.

In a case such as this one involving the legal rights of panhandlers, there is a heightened need for training because of undeniable societal realities. Panhandlers are an unwelcome presence, especially in areas frequented by tourists such as Daley Plaza,[9] but their speech is protected in public forums. The presence of panhandlers is regarded as an inconvenience and an eyesore in a culture that prizes convenience and aesthetics; and panhandlers' legal rights clash with our society's commercial interests and preferences. Police and security personnel are in a difficult position at the intersection of competing interests—society's desire to be free of the unpleasant inconvenience of people who panhandle and the First Amendment rights of these individuals. Without training, there is an extremely high risk that security personnel in the Plaza will respond to these pressures by removing panhandlers from the Plaza without regard to their constitutional right to be there.

Moreover, the allegations in Plaintiffs' Complaint suggest that the Defendant deputies and security personnel have not been properly trained to respect the legal rights of panhandlers. For instance, PBC contends in its motion that its written regulations permit panhandling. However, their own security guards have been videotaped saying the exact opposite—that panhandling is illegal and could subject Plaintiff to arrest. Complaint ¶ 24. In addition, pre-discovery evidence shows that a ban on peaceful panhandling on the Plaza has been imposed for more than three years, and Plaintiff has been a victim of the policy at least five times in incidents involving at least five different officers. Complaint ¶¶ 15–29.

---

[9] There have been multiple instances in which the City of Chicago has sought to ban panhandlers' from tourist areas, including the practices documented in: *Pindak v. City of Chicago*, 12 C 4005 (Michigan Avenue), *Pindak v. City of Chicago*, 06 C 5679 (Millennium Park); *Hudson, et al. v. City of Chicago*, 05 C 5449 (bridges); and *Thompson et al. v. City of Chicago*, 01 C 6916 (arrests of panhandlers on Michigan Avenue pursuant to disorderly conduct statute).

14

Likewise, Defendants' claim that Plaintiff does not have sufficient evidence regarding training should be given little credit when all of the information that can support the Monell claim is in their exclusive control. Plaintiff should be given the opportunity to develop an evidentiary record to determine whether he can provide support for his failure-to-train claims. McCormick v. Chicago, 230 F.3d 319, 325 (7th Cir. 2000) (error to dismiss Monell claim on the ground that it was too conclusory); see also, Amnesty America v. West Hartford, 361 F.3d 113, 130 n.10 (2nd Cir. 2004) ("it is unlikely that a plaintiff would have the information about the city's training programs … at the pleading stage, and therefore need only plead that the city's failure to train caused the constitutional violation.")[10]

At this point in the litigation, Plaintiff has pled sufficient facts to raise a plausible claim that Defendants' failure to train their officers regarding the legal rights of panhandlers was one cause of the repeated violations of Plaintiff's First Amendment rights.

### VII. Color of Law and Exclusive Public Function

The principal argument advanced by Securitas and MBRE is that the security officers who police the Plaza are private individuals not acting "under color of law" and therefore cannot be held liable pursuant to § 1983. PBC also raises this argument. See, Securitas Brief, Dkt. 89, 4-6, MBRE Brief, Dkt. 87, 4-7, and PBC Brief, Dkt. 85, 9. The argument is directly contrary to law.

The Supreme Court has held that "[c]onduct that is formally 'private' may become so entwined with governmental policies or so impregnated with a governmental character as to become subject to the constitutional limitations placed upon state action. … When private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State, and subject to its constitutional limitations." Evans v. Newton, 328 U.S. 296, 299 (1966).

The U.S. Supreme Court has squarely held that regulation of constitutionally protected speech in a public forum is an exclusive government function. Marsh v.

---

[10] With regard to the County, Plaintiff does have evidence about the training deputies receive on this issue. There is none: "Q: Are you aware of whether sheriff's deputies receive any training regarding First Amendment activities in the Daley Plaza? A: No. … I am aware they do not." Ex. 1, Dep of Connolly, p. 26.

Alabama, 326 US 501, 509 (1946). In Marsh, the Court examined whether a company that regulated speech in a shopping district in its privately owned town became a state actor. The Court concluded that it did. The Court held that the fact that the property was privately owed "is not sufficient to justify the State's permitting a corporation to govern a community of citizens so as to restrict their fundamental liberties." Id. at 509.

Indeed, over the years, every court that has had occasion to consider the question has reaffirmed the principle articulated in Marsh—a private actor regulating speech in a public forum is a state actor subject to constitutional limitations. See, Lee v. Katz, 276 F.3d 550, 554-557 (9th Cir. 2002) (private corporation that leased an outdoor area next to city-owned public facilities was subject to §1983 liability for interfering with street preachers' right to engage in expression); United Church of Christ v. Gateway Econ. Dev. Corp. of Greater Cleveland, Inc., 383 F.3d 449, 454-455 (6th Cir. 2004) (First Amendment applied to privately owned sidewalk around privately owned sports complex); Citizens To End Animal Suffering and Exploitation v. Faneuil Hall Marketplace, 745 F. Supp. 65 (D. Mass. 1990) (a private corporation's regulation of free speech activities on publicly owned land leased by the corporation was a public function); Venetian Casino v. Local Joint Executive Board, 257 F.3d 937 at 943 (9th Cir. 2001) (a sidewalk constructed on private property to replace a public sidewalk, accommodating pedestrian traffic adjacent to Las Vegas Boulevard, was deemed a public forum subject to the protections of the First Amendment); Rouse v. City of Aurora, 901 F. Supp. 1533, 1535-36 (D. Colo. 1995), (the First Amendment applied to a privately owned shopping center sidewalk); North Shore Right to Life Committee v. Manhasset American Legion Post No. 304, 452 F. Supp. 834, 837-838 (E.D.N.Y. 1978) ("As the organizer of a public function on public property, the American Legion is acting as the agent or fiduciary of the municipality. It is subject to obligations and responsibilities under the Constitution and Civil Rights Act.") Based on this case law, it cannot be seriously disputed that the private security personnel employed to police Daley Plaza take on the character of state actors and are subject to constitutional limitations when they regulate expressive activities in a traditional public forum such as Daley Plaza.

In support of their argument that security personnel are not public actors, all Defendants rely heavily on Wade v. Byles, 83 F. 3d 902, 904 (7th Cir. 1996), a

fundamentally inapposite case involving private security personnel employed to provide security in the lobbies of CHA buildings. In finding that the private security personnel in Wade were not state actors, the court emphasized that the guards had highly limited authority—their only function was to prohibit trespassers from gaining entry to the buildings. Indeed, they weren't even permitted to leave the lobbies of the buildings in performance of their duties. Wade, 83 F.3d at 906 ("Byles possessed powers no greater than those of armed security guards who are commonly employed by private companies to protect private property.")

That is a far cry from the present case where security personnel employed by MBRE and Securitas to police Daley Plaza perform the core government function of regulating First Amendment speech in a public forum. Defendants' reliance on this inapplicable case law should be rejected.

## VIII. Injunctive Relief

A plaintiff alleging a deprivation of his or her constitutional rights by a municipality may bring an action against the municipality for declaratory or injunctive relief under § 1983. Teesdale v. City of Chicago, ___F3d ___. 2012 WL 3240696 (7th Cir. August 10, 2012), citing Monell 436 U.S. at 690. The Court should grant a preliminary injunction where the moving party makes a showing that: (1) he is likely to succeed on the merits of the case; (2) he lacks an adequate legal remedy and is likely to suffer irreparable harm in the absence of preliminary injunctive relief; (3) the balance of equities is in his favor and; (4) an injunction is in the public interest. Winter v. Natural Resources Defense Council, Inc., 129 S.Ct. 365, 374 (2008).

PBC and the County Defendants argue that Plaintiff's complaint does not sufficiently allege irreparable harm. PBC Brief, Dkt. 85, 10; County Brief, Dkt. 91, 8-9. The argument does not withstand scrutiny.

In demonstrating that his First Amendment rights have been infringed upon and continue to be infringed upon, Plaintiff has shown that irreparable harm will occur without injunctive relief. Elrod v. Burns, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.") The chilling effect on Plaintiff's exercise of his rights is real and ongoing. Plaintiff is fearful of being stopped, arrested, and jailed for peacefully

panhandling in Daley Plaza. As a result, Plaintiff avoids the Plaza altogether. Complaint ¶ 43–45. These allegations are more than sufficient to support Plaintiff's claim for injunctive relief.

## Conclusion

Plaintiff's complaint has stated a plausible cause of action under <u>Monell</u> against MBRE, Securitas, PBC and Cook County. Accordingly, all of Defendants' motions to dismiss should be denied.

Respectfully submitted,

<u>/s/ Adele D. Nicholas</u>

<u>/s/ Mark G. Weinberg</u>
*Counsel for Plaintiff*

Adele D. Nicholas
4510 N. Paulina Street, 3E
Chicago, Illinois 60640
847-361-3869

Mark G. Weinberg
3612 N. Tripp
Chicago, Illinois 60641
773-283-3913