IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KIM PINDAK | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 10 C 6237 |
| | ) | |
| THOMAS J. DART, Sheriff of Cook County, | ) | |
| COOK COUNTY, ILLINOIS, CITY OF | ) | Judge Pallmeyer |
| CHICAGO, a municipal corporation, | ) | Magistrate Judge Kim |
| MB REAL ESTATE SERVICES, LLC, | ) | |
| a Delaware Corporation, SECURITAS | ) | Jury Demand |
| SECURITY SERVICES USA, INC., an | ) | |
| Illinois Corporation, and DERON | ) | |
| TRUMAN, ANTONIO KELLY, | ) | |
| Laverne Nance and Dalibor Jevtic , | ) | |
| | ) | |
| Defendants, | ) | |

**DEFENDANTS' SECURITAS SECURITY SERVICES USA, INC., DERON TRUMAN AND ANTONIO KELLY'S STATUS REPORT REGARDING DISCOVERY AND PLAINTIFF'S 30(b)(6) DEPOSITION NOTICE**

Now Comes the Defendants, Securitas Security Services USA, Inc., Deron Truman and Antonio Kelly, by their attorneys, Rutkowski Law Group P.C. and pursuant to the court's order of January 6, 2014 provides this honorable court with the following status report with respect to issues related to fact discovery.

**Background**

The history of this case and the current discovery dispute have been previously set forth in the Defendant's Response to the Plaintiff's Motion to Compel (Doc. 156).

On January 6, 2014, the parties appeared before the court for hearing on the Plaintiffs' Motion to Compel Defendant Securitas USA to present witness(es) pursuant to the Plaintiffs' 30(b)(6) Notice which was issued on April 29, 2013.

After reviewing the Plaintiffs' Motion and the Defendants' response, this court denied the Plaintiffs' Motion. After the issuance of his ruling, Magistrate Judge Kim engaged the parties in a discussion with respect to the discovery remaining, and in particular the Plaintiffs' apparent need for testimony by a corporate representative. Magistrate Judge Kim expressed the fact that there were some problems associated with the Plaintiffs' 30(b)(6) notice and engaged the parties in a discussion regarding how those problems could be dealt with to provide the Plaintiffs' with information that they sought.

Counsel for the parties, along with Magistrate Judge Kim agreed that the most expedient course of action would be for the counsel for the Defendant, Securitas USA to review the deposition testimony of previously produced witnesses Toriano Coleman, David McQuinn, and Ray Pohl and communicate with the Plaintiffs' Attorneys to identify the specific 30(b)(6) topics covered by depositions of Securitas USA employees, along with the names of the deponents and to identify the topics or sub-topics to which it cannot designate a witness along with an explanation. (See Doc. 157)

The court's order required the Plaintiffs to identify the Rule 30(b)(6) topics that they believe are still outstanding (by January 24, 2014). (See Doc. 157)

2

The court's order finally requested that the parties file a joint status report or their own separate reports as to what 30(b)(6) topics remain open in discovery with supporting exhibits by January 31, 2014. (See Doc. 157).

**Defendants' Letter to Plaintiffs' Counsel January 20, 2014**

On January 20, 2014, pursuant to the court's order, counsel for the Defendant Securitas USA delivered to the Plaintiffs' Attorneys via email and US Mail a 9-page letter in which Defendants' Counsel specifically addressed the problems associated with the Plaintiffs' 30(b)(6) Notice and identified on a topic and sub-topic basis the identity of each witness who provided testimony on the given topic, as well as the person most knowledgeable for Securitas USA on the particular topic and/or sub-topic wherever possible. Counsel's correspondence also offered to bring certain witnesses back for deposition to provide the Plaintiffs with additional testimony in given topic and sub-topic areas if necessary. (See Defendants' Correspondence to Plaintiffs' Counsel which has been attached hereto as Exhibit "A").

**Plaintiffs' Response to Defendants' Letter of January 20, 2014**

On Tuesday, January 21, 2014, Plaintiffs' Counsel Adele Nicholas sent an email to Defendants' Counsel in which she claimed that Securitas USA had failed to comply with the court's order of January 6, 2014. (See Plaintiffs' Email which has been attached hereto as Exhibit "B".)

**Defendants' Response to Plaintiffs' Counsel's Email Correspondence of January 21, 2014**

On Wednesday, January 22, 2014, Counsel for Securitas USA responded to the

Plaintiffs' email of January 20, 2014. In this email correspondence, Defendants' Counsel

respectfully disagreed with the Plaintiffs' Attorneys' position and requested clarification

regarding how specifically the Defendants had failed to comply with the court's order. (See

a copy of Defense Counsel's email which has been attached hereto as Exhibit "C".)

**Plaintiffs' Email Correspondence January 23, 2014**

In response to Defense Counsel's email of January 22, 2014, Plaintiffs' Counsel Adele

Nicholas issued an email specifically addressing the three topic areas listed in the Plaintiffs'

30(b)(6) Notice. (See a copy of Plaintiffs' Counsel's email which has been attached hereto

as Exhibit "D".)

**Defendants' Response to Plaintiffs' Counsel's Email Correspondence of January 23, 2014**

On January 24, 2014, Defendants' Counsel sent an email to the Plaintiffs' Counsel in

response to the Plaintiffs' Counsel's email of January 23, 2014. (See a copy of Defense

Counsel's email which is attached hereto as Exhibit "E").

In this email, Defendants' Counsel specifically addressed the three topics listed in the

Plaintiffs' Counsel's email from January 23, 2014: "Post Orders, Training and Policy."

With respect to "Post Orders" Defendants' Counsel explained the sub-topics

involved therein. Defense Counsel previously identified Toriano Coleman as the person

most knowledgeable on certain sub-topics, including the day-to-day operations at Daley

Center. There are other aspects of the post orders (such as delivery of post orders by MB

4

Real Estate to Securitas USA or to SMI, Inc.) which would require someone other than Mr. Coleman to testify as the person most knowledgeable.

Defendants' Counsel asked the Plaintiffs' Counsel to clarify the precise nature and parameters of the information that they were seeking so that he could produce the appropriate witness(es) for the given sub-topic(s).

The Plaintiffs' Counsel has failed to respond to this request.

With respect to the topic of "Training," Defendants' Counsel reaffirmed the offer contained in his January 20, 2014 response to produce Mr. Steve Castans to testify regarding certain aspects of training that were not covered in Mr. Pohl's deposition testimony.

Defendants' Counsel's email pointed out to the Plaintiffs' Attorneys that their request spanned the time period 2010-2012.  This time period requires some clarification since SMI, Inc. provided security services at Daley Center during 2010 until Securitas USA acquired SMI in late October of 2010 (a fact well known to Plaintiffs' Counsels). Defendants' Counsel also pointed out to the Plaintiffs' Attorneys that there is a difference in sub-topics such as on the job training, post specific training and training received in quarterly training classes.

Once again, Defendants' Counsel asked for clarification so that he could ensure that the appropriate witness(es) could be tendered for deposition(s) and would be prepared to testify.

The Plaintiffs' Counsel has failed to respond to this request.

5

With respect to the topic of "Policy," Counsel for the Defendants attempted to explain that since Securitas USA had no authority to make policy and did not make policy at Daley Center/Plaza it was not possible for Securitas USA to produce a 30(b)(6) witness on this topic area.

It is interesting to note that the Plaintiffs' Attorneys have not deposed anyone from the Public Building Commission of Chicago (the building's owner) and have only deposed a single individual from MB Real Estate Services LLC, the building's property manager. The individual presented by MB Real Estate Services LLC was Ed Carik, MB Real Estate's Director of Security for the Daley Center. Mr. Carik stated that he didn't write the post orders, that he hadn't looked at them, but perhaps one time since 2006 that the current post orders were created prior to 2006 and that he did not know who had authored the post orders.

Having reviewed the Contract for Security Services and the Post Orders, the Plaintiffs' Counsels are fully aware that Securitas USA has no policy-making authority at Daley Center/Plaza. Defendants' Counsel asked the Plaintiffs' Counsels to provide some evidence that Securitas USA has the authority to make policy at Daley Center/Plaza in order to justify this line of inquiry.

The Plaintiffs' Counsels have failed to respond to this request.

Each correspondence issued by the Defendants' Counsel invited the Plaintiffs' Attorneys to contact him to discuss the matter in greater detail and to make arrangements for the presentation of witnesses for deposition testimony.

6

Instead of contacting the Defendants' Counsel directly, the Plaintiffs' Counsels filed their status report with the court on January 24, 2014.

While it is ironic that their status report, which was filed late in the evening on January 24, 2014 is the first time where the Plaintiffs' have chosen to elaborate on their rather general inquiry, the Plaintiffs' own status report to the court demonstrates the inherent complexity of the Plaintiffs' multiple lines of intended inquiry. In an effort to move this matter forward, each of the Plaintiffs' Topic Areas and Comments contained in their status report to the court are addressed below.

### Post Orders

The parties apparently agree that Securitas USA is a private company that provides various security staffing services for a wide range of clients on a national basis. The Plaintiffs ignore the fact that activity that transpires at one account at the request of a client may not transpire at another client's account because of that client's desire (e.g. access control duties versus no access control duties, or roving patrols v. stationary posts). It is therefore disingenuous of the Plaintiffs' Attorneys to attempt to make arguments about generalized statements made by Securitas USA about the general process of formulating post orders and say that they are applicable to a given account or that these statements appear contradictory.

The simple fact is that some clients hire a security staffing company and tell the company what they would like each security officer assigned to a post to do while on post. Other clients will hire security consultants (not Securitas USA) to develop a site specific

security plan, including post orders, then contract with a security staffing company such as Securitas USA to staff that security plan.

The Plaintiffs' are fully aware from the testimony that the Daley Center/Plaza Account falls into the latter category. Taking selective excerpts from deposition testimony without accurately reflecting the full scope of the testimony is nothing more than a deliberate attempt to mislead this court. Deliberately misstating deposition testimony is more offensive.

In reference to the Post Orders, Plaintiffs' Counsels state in their status report that *"MBRE's 30(b)(6) witness testified that Securitas is responsible for writing the Post Orders."*

The Plaintiffs' Attorneys took the deposition of Mr. Ed Carik, who was designated as MB Real Estate's 30(b)(6) witness, and who is also allegedly the person most knowledgeable regarding the post orders at the Daley Center. In response to inquiries made by Plaintiffs' Counsel Adele Nicholas, Mr. Carik provided the following testimony regarding the post orders at Daley Center:

> Q:   *Who wrote the post orders for Daley Center?*
> A:   *I don't have a clue.*
> Q:   *Did you have any involvement in writing them?*
> A:   *I did not.*
> Q:   *Do you know whether Securitas had any involvement in writing them?*
> A:   *I can't answer that because I don't—I'm not sure how old those post orders were and where they originated from.*

(See the Transcript of the deposition testimony of Ed Carik that has been attached hereto and incorporated herein as Exhibit "F". (Page 45, Ln. 13-24))

8

The Plaintiffs' Attorneys are fully aware that Securitas USA has maintained that it did not author the post orders in general and that it did not specifically author post order "Chapter 16" in particular. Moreover, at the previous deposition of Securitas USA's Branch Manager David McQuinn, (who was tendered individually and as a 30(b)(6) witness on the sub-topic of how Securitas USA received the post orders when it assumed the contract from SMI, Inc.) the Plaintiffs' Counsel failed to conduct any inquiry despite being provided the opportunity. (See the transcript of the testimony of David McQuinn which has been attached hereto as Exhibit "G".)

Regarding Chapter 16 of the post orders, respectfully the post order does not say what the Plaintiffs' claim that it says. It is instructive to note that the Post Orders for Daley Center were not produced by Securitas USA, but rather by MB Real Estate Services LLC after a protective order was put in place at MB Real Estate Services' request. This Protective Order prevents the post orders from being included as an exhibit to this status report. The Defendants' respectfully suggest that the court review the Post Orders in general and Chapter 16 in particular via an in camera inspection.

It is also disingenuous for the Plaintiffs' Counsels to selectively provide testimony of a witness to mislead the court. Defendant Deron Truman provided extensive testimony in this case at his deposition. While Mr. Truman did state that panhandling was not permitted in Daley Plaza, in his deposition testimony Mr. Truman clarified his testimony stating that only "aggressive" panhandling was not permitted on Daley Plaza. Plaintiffs' Counsels are aware that Mr. Truman made this clarification during his testimony, however they

selectively choose to ignore the fact that the clarification was made. The full deposition transcript reflects this clarification, and could be reviewed by the court if the court so desires.

With respect to Mr. Coleman's testimony stating that there are both written and unwritten (oral) post orders, this statement is true. Nevertheless, a review of Mr. Coleman's testimony on pages 105-106 of his deposition transcript demonstrates that contrary to the Plaintiffs' Attorneys' assertions, Mr. Coleman did not make any statement regarding a conflict between oral and written post orders. (A complete copy of the transcript of Mr. Coleman's deposition testimony has been attached hereto as Exhibit "H.")

The simple fact is that post orders are written instructions provided to security guards. At times, a client may desire something else to be done on a temporary basis (for example, the post order may call for one guard at a post, but the client may ask that two guards be stationed at the post for a period of time for whatever reason). Does such an oral post order contradict a written post order? On some level, that the argument can be made, however irrelevant the argument may be.

Finally, the Plaintiff appears to imply by its inquiry that there is a duty on the part of a private security staffing provider to conduct a "legal review" of post orders. The Plaintiffs' also encompass the word "safety" into such an inquiry. These are two separate and distinct lines of inquiry.

The Plaintiffs are aware that Securitas USA does not have any police powers or powers of arrest at Daley Center or otherwise. They are aware that Securitas USA (and SMI)

did not author the post orders, or the overall security plan. They are aware that the overall security plan was authored by outside consultants not under the employ of Securitas USA (or SMI), but rather by the Public Building Commission of Chicago and/or MB Real Estate Services LLC. Nevertheless, the Plaintiffs' have ignored these sources of information and chosen to pursue information from Securitas USA which is not within its scope, custody or control and when told that fact, the Plaintiffs' Attorneys have become insistent that Securitas USA is non-compliant.

## Policy Regarding First Amendment and/or Panhandlers

The Plaintiffs' Attorneys claim that it is critical for the Plaintiffs to be permitted to inquire on the issue that Securitas USA does not make policy at Daley Center. Securitas USA has consistently stated that it does not have any authority to make policy at Daley Center. The Plaintiffs' have known for several years that Securitas USA is a private security staffing company that provides security staff to fill positions in the Daley Center's security plan pursuant to contract. The Plaintiffs' are aware that Securitas USA did not design or author the security plan at the Daley Center.

In order to prove a claim under 42 USC §1983, the Plaintiff must show that the individual was acting under the color of state law. Since Securitas USA is a private security staffing company and not a state agency, logic would dictate that in order for Securitas USA to function as a "state actor" it must have some grant of authority from the State. The Security Contractor's License issued by the State of Illinois is insufficient to make Securitas USA a "state actor." As a result, if Securitas USA had policy-making authority at Daley

Center, from where did such authority originate? The Plaintiffs' have no answer for this question. As a result, their inquiry about policy-making becomes (as Magistrate Judge Kim illustrated during the motion hearing on January 6, 2014) essentially an inquiry akin to the "Have you stopped beating your wife yet, yes or no?" line of inquiry.

The Plaintiffs cannot show any evidence that Securitas USA has any authority to make policy at Daley Center and yet demands the opportunity to inquire of Securitas USA about its policy making authority at Daley Center and/or why it does not have policy-making authority at Daley Center. The Plaintiffs' Attorneys also assert in their status report that Securitas USA's claim of a lack of authority to make policy at Daley Center amounts to a "Hands Off Policy." Subject to such a ridiculous assertion, it is impossible for Securitas USA to properly respond to this line of inquiry.

One need only look to the testimony of Ed Carik, MB Real Estate Services LLC's Director of Security at Daley Center to determine the scope of authority or lack thereof of Securitas USA guards who are providing security staffing services at Daley Center:

> Q: You mentioned that Daley Plaza itself is the purview of the Chicago Police Department, correct?
> A: When problems are out there, yes.
> Q: Is it—do the individual security officers working at Daley Plaza for Securitas have any police power whatsoever?
> A: They do not.
> Q: Do they have any power to arrest individuals?
> A: They do not.
> Q: Can they swear out criminal complaints against individuals?
> A: No.
> Q: Are they empowered under the –their contract to enforce laws or the municipal code?
> A: No they are not.

12

Q: Has anyone at MBRE ever told anyone at Securitas that people can't panhandle on Daley Plaza?

A: Not that I am aware of.

Q: Has anyone at Securitas ever told MB that people can't panhandle on Daley Plaza?

A: Not that I'm aware of.

Q: Has anyone at SMI, prior to the time Securitas came to work at Daley Plaza told anyone at MB that panhandlers were not allowed on Daley Plaza?

A: Not that I am aware of.

Q: Would it be a fair statement to say that Securitas, or SMI before them, can't dictate who can and can't be on the plaza?

A: I would agree with that.

See Exhibit "F", pp. 101-102

One can easily conclude from the testimony of Ed Carik, MB Real Estate Services LLC's Director of Security for Daley Center/Plaza and MB Real Estate Services LLC's person most knowledgeable regarding the post orders for the Daley Center that Securitas USA has no authority to make any policy at it pertains to the Daley Center in general and panhandling, whether peaceful or aggressive in particular. The Plaintiffs have no evidence to the contrary. Ironically, during the course of Mr. Carik's deposition, despite knowing that Securitas USA Site Supervisor Toriano Coleman reports to Mr. Carik, the Plaintiffs' Attorneys failed to ask Mr. Carik why Securitas USA does not possess any such authority to make policy.

## Training

The Plaintiffs' Attorneys have consistently misquoted Mr. Ray Pohl's testimony. Mr. Pohl is Securitas USA's Training and Development Manager for Securitas USA's downtown Chicago location, which encompasses all accounts in the City of Chicago, including the Daley

Center. He testified that has held that position since July of 2012. Contrary to the Plaintiff's assertions, Mr. Pohl did not join Securitas USA in 2012. Rather, Mr. Pohl was an employee of SMI before joining Securitas USA at the time of Securitas USA's acquisition of SMI in late October 2010. (See the transcript of the testimony of Ray Pohl which has been attached hereto as Exhibit "I" p. 4-10.

In Defense Counsel's letter of January 20, 2014 (Ex. "A"), Defense Counsel indicated that there are several sub-topics associated with training. First of all, there is training that SMI's security guards received prior to October 2010. Secondly, there is training that Securitas USA's security guards received from October 2010 to the present time. Thirdly, the topic of training can be further broken down into the categories of: (a) the 20 hour training required by the State of Illinois to obtain a PERC Card which licenses a security officer; (b) the annual 8 hour "refresher" training required under Illinois law to maintain a security officer's PERC Card; (c) site specific training; (d) post specific training (where different posts have different responsibilities), and (e) quarterly training as required by the contract for security staffing services for Daley Center. For this quarterly training, a variety of topics can be covered, including asbestos removal procedures, CPR Certification Training, as well as other topics including "Customer Service" and "Limits of Authority".

Defense Counsel has offered to produce Mr. Steve Castans as a 30(b)(6) witness to supplement the testimony regarding training that has already been provided by Mr. Ray Pohl. Defense Counsel has also indicated that for some of these sub-topic areas, Toriano Coleman, Securitas USA's Site Supervisor may be the person most knowledgeable. Defense

14

counsel has requested clarification from the Plaintiffs' Attorneys regarding the areas in which the Plaintiffs would like to conduct further inquiry so that he can present the appropriate witness(es) and ensure the witness(es)' preparation.

The Plaintiffs' Attorneys have failed to respond to Defense Counsel's inquiry.

## Conclusion

Defense Counsel believes that Securitas USA has made a good faith attempt to comply with both the Court's order of January 6, 2014, as well as the Plaintiff's flawed Rule 30(b)(6) notice dated April 29, 2013. Defense Counsel for Securitas USA has attempted to and is willing to continue to attempt in good faith to resolve the discovery issues presented by both the Plaintiffs' and Defendants' status reports to this court. While there is no motion pending before this court with respect to discovery, this Defendant recognizes the efforts of this court to intercede in and mediate the issues presented. Accordingly, this Defendant has not filed a motion to strike the Plaintiffs' 30(b)(6) notice dated April 29, 2013, or alternatively moved this court for the entry of an order requiring the Plaintiffs' to clarify the nature of the subject matter and intended inquiry of any witness pursuant to the Plaintiffs' 30(b)(6) notice. If this court believes that it would be productive for the Defendant, Securitas USA to file such a motion, the Defendant, Securitas USA would respectfully request the opportunity to file such a motion in order to advance the issues presented towards a logical conclusion.

Rutkowski Law Group P.C.

/s/Anthony R. Rutkowski
Attorney for Defendant,
Securitas Security Services USA, Inc.,
Deron Truman and Antonio Kelly

Anthony R. Rutkowski
Rutkowski Law Group P.C.
321 N. Clark Street, Fifth Floor
Chicago, Illinois  60654
Telephone: (312)445-6390
Fax: (312)276-4579
ARR@RutkowskiLawGroup.com

## CERTIFICATE OF SERVICE

I hereby certify that I have served this notice and the attached document by electronic means via CM/ECF to all attorneys of record for all parties on this 31[th] day of January, 2014.

Rutkowski Law Group P.C.

/s/Anthony R. Rutkowski
Attorneys for Defendant
Securitas Security Services USA, Inc.

Anthony R. Rutkowski
Rutkowski Law Group P.C.
321 N. Clark Street, Fifth Floor
Chicago, Illinois 60654
(312)445-6390
(fax)(312)276-4579
ARR@RutkowskiLawGroup.com