# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| KIM PINDAK et al., | ) | |
| | ) | |
| Plaintiff, | ) | 10 C 6237 |
| | ) | |
| v. | ) | Judge Pallmeyer |
| | ) | Magistrate Judge Kim |
| COOK COUNTY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MOTION FOR JUDGMENT AS A MATTER OF LAW**

Plaintiff Kim Pindak, through counsel, and pursuant to Federal Rule of Civil Procedure 50(a), respectfully requests that this Honorable Court grant him judgment as a matter of law on his *Monell* claim against Cook County Sheriff Tom Dart. In support of this motion, Plaintiff states as follows:

**I.    Introduction**

The uncontroverted evidence at trial established each element of Kim Pindak's deliberate indifference *Monell* claim against Cook County Sheriff Tom Dart. Based on the evidence presented at trial, no reasonable jury could find for Defendant Cook County Sheriff Tom Dart on Plaintiff's failure to train *Monell* claim. For this reason, judgment as a matter of law should be entered for Plaintiff Pindak.

**II.    Legal Standard**

Federal Rule of Civil Procedure 50(a)(1) sets forth the legal standard under which a district court should evaluate a motion for judgment as a matter of law. Rule 50(a)(1) states as follows:

1

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
>
> (A) resolve the issue against the party; and
>
> (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

Fed. R. Evid. 50(a)(1). See also, *Mayer v. Gary Partners and Co., Ltd.*, 29 F.3d 330, 335 (7th Cir. 1994). The standard for deciding motions for judgment as a matter of law mirrors the standard for deciding a motion for summary judgment. *Shields Enterprises, Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1294 (7th Cir.1992). "In either case, the district court must enter judgment if, under the governing law, a reasonable fact-finder could not find for the nonmoving party." *Id.*; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## III. Argument

To succeed on his claim against Cook County Sheriff Tom Dart for failure to train, Plaintiff must prove each of the following things by a preponderance of the evidence:

1. The Cook County Sheriff Department's training program was not adequate to train its employees to properly handle recurring situations;

2. Cook County Sheriff Tom Dart knew that more and/or different training was needed to avoid likely violations of First Amendment rights, or that this was obvious to Sheriff Dart; and

3. The Cook County Sheriff Department's failure to provide adequate training caused Defendant Dalibor Jevtic and/or Defendant Laverne Nance to violate Plaintiff's First Amendment rights.

*See,* Seventh Circuit Pattern Jury Instruction 7.21. As shown below, the undisputed evidence presented at trial satisfies each of these three elements.

### A. The Sheriff's Training Was Inadequate

First, the Cook County Sheriffs Department's training program was not adequate to train its employees to address the legal right to engage in peaceful panhandling on Daley Plaza. It is undisputed that the Cook County Sheriffs' department has provided no policy and no training to its deputies regarding the First Amendment rights of panhandlers on Daley Plaza. The Sheriff's 30(b)(6) witness on First Amendment training and First Amendment policy Kevin Connelly and both Defendants Nance and Jevtic testified unequivocally on this issue.

In particular, Defendants Nance and Jevtic testified that they received no training on the First Amendment rights of panhandlers and no training on how to deal with panhandlers on Daley Plaza. In addition they testified they were never shown the Chicago panhandling ordinance and were never given a written policy or oral instruction on the issue of panhandling. Deputy Jevtic testified about his training as follows:

> Q. And you personally have never received any training from the sheriff's department about panhandling; right?
>
> A. That is correct.
>
> Q. And not only have you not received formal training, but you've never received any kind of oral instructions or orders about panhandling; right?
>
> A. No, ma'am.
>
> Q. And none of your supervisors have ever even talked to you about whether panhandling is allowed on Daley Plaza; true?
>
> A. Not that I can recall, no.
>
> Q. And you didn't receive any training on the Chicago ordinance that sets forth how people are allowed to panhandle; right?
>
> A. No, I did not.
>
> Q. Are you even familiar with the Chicago ordinance on panhandling?

3

> A. No, I am not.
>
> Q. Have you ever received a written policy from the sheriff's department about whether panhandling is permissible on Daley Plaza?
>
> A. Not to my knowledge, no.

(Ex. 1, Jevtic Trial Testimony, p. 50-51.)

Additionally, Nance testified about his training as follows:

> Q. And that's your understanding as well. You have never been trained about the rights of panhandlers on Daley Plaza, right?
>
> A. That is correct.
>
> Q. And you also have not been trained by the sheriff's department on the Chicago panhandling ordinance, right?
>
> A. That is correct.

(Ex. 2, Nance Trial Testimony, p. 15-16).

Kevin Connelly, the Sheriff's 30(b)(6) witness on policy and training, confirmed that the Sheriff's department has no policy regarding the legal right to panhandle on Daley Plaza and provides no training to its deputies about the First Amendment rights of panhandlers:

> Q. I understand that the sheriff's department provides deputies no training about whether panhandling is allowed on Daley Plaza; isn't that true?
>
> A. That is correct.
>
> Q. And they receive no training concerning the Chicago ordinance about panhandling; right?
>
> A. That is correct.
>
> Q. No training about the fact that an individual does not need a permit to panhandle on public property; right?
>
> A. That is correct.
>
> Q. And no training concerning the permissibility of First Amendment activity on Daley Plaza at all?

> A. That is correct.

(Ex. 3, Kevin Connelly Trial Testimony, p. 20-21.) This uncontroverted evidence demonstrates that the Sheriff's training program was inadequate to train its employees to prevent the violation of individuals' right to panhandle on Daley Plaza.

### B. The Sheriff Knew of the Need for More Training and the Need Was Obvious

Second, Cook County Sheriff Tom Dart both knew of the need for more or better training to avoid likely violations of First Amendment rights and the need was obvious.

At trial, undisputed evidence was presented that Sheriff Dart knew of the need to train his employees, having received notice of the fact that panhandlers were being removed from Daley Plaza in violation of their First Amendment Rights. On September 29, 2010, Plaintiff Pindak filed this civil rights lawsuit against the Cook County Sheriff. This Court took judicial notice of this fact during trial. In that Complaint, Plaintiff Pindak alleged that the sheriff's deputies assigned to Daley Plaza were violating his First Amendment rights to peacefully panhandle on the Plaza and that the Sheriff was liable for failing to properly train his deputies on the First Amendment rights of individuals to panhandle.

Additionally, on February 1, 2012, Kevin Connelly gave a deposition as the Sheriff's 30(b)(6) witness regarding First Amendment policies and training on Daley Plaza. This Court took judicial notice of this fact at trial. At trial, Mr. Connelly acknowledged that at the time of his deposition he was familiar with the Complaint, testifying as follows:

> Q. Okay. So you have seen the complaint in this case; correct?
> A. When I was deposed.
> Q. Okay. And that was in 2012; right?
> A. Yes, ma'am.

(Ex. 3, Connelly Trial Testimony, p. 21.) Mr. Connelly further testified that he understood the lawsuit (1) to have alleged the unlawful interference by sheriff's deputies with the First Amendment rights of Plaintiff to engage in peaceful panhandling on Daley Plaza; and (2) to assert a claim that the Sheriff has failed to adequately train his deputies on the legal rights of panhandlers:

> Q. Okay. This lawsuit, when it was filed on September 29, 2010, accused the sheriff's department of unlawful interference with the First Amendment right to panhandle on Daley Plaza; right?
>
> A. Correct.
>
> Q. And this lawsuit also accused Sheriff Dart of not training his deputies to protect the legal rights of panhandlers; right?
>
> A. I believe that's what it said.

(Ex. 3, Connelly Trial Testimony p. 22-23.) Based on this testimony, it is indisputable the Sheriff had knowledge of the nature of the problem and that training was needed as early as September 29, 2010 (when the Complaint was filed) and at the latest by February 1, 2012 (when Mr. Connelly testified as the Sheriff's 30(b)(6) witness).

Yet, in response to having received the Complaint, the Sheriff did nothing. He did not institute new training; nor did he issue any policy. Mr. Connelly admitted this at trial:

> Q. Now, at any time after you became aware of the allegations of this lawsuit, did Sheriff Dart give his deputies any training about the First Amendment rights of people who panhandle?
>
> A. I am not aware of the curriculum in our training academy right now, but I do not believe so.
>
> Q. And did Sheriff Dart give deputies any written policies about the First Amendment rights of panhandlers at any time after you became aware of the allegations of this complaint?
>
> A. No.

6

> Q. Did Sheriff Dart ever issue a memorandum for distribution to the deputies who work on the plaza about the First Amendment rights of panhandlers?
>
> A. Not that I am aware of.
>
> Q. Do you know whether anyone from the sheriff's department even had a conversation with the deputies who work on Daley Plaza about the First Amendment rights of people who panhandle?
>
> A. I don't know.

(Ex. 3, Connelly Trial Testimony, p. 23.)

In fact, in response to having received Plaintiff's Complaint, the supervisors did not even have a conversation with the guards who work on the plaza about the legal rights of panhandlers:

> Q. And none of your supervisors have ever even talked to you about whether panhandling is allowed on Daley Plaza; true?
>
> A. Not that I can recall, no.

(Ex. 1, Jevtic Trial Testimony, p. 50.)

Even after the Sheriff was presented with the audio recording of Jevtic, no one from the Sheriff's department had a conversation with Jevtic about that audio recording:

> Q. Has anyone from the sheriff's department even talked to you about what's on this recording?
>
> A. At what timeframe?
>
> Q. At any time, from May 2012, when this recording was made, until now.
>
> A. No, ma'am.

(Ex. 1, Jevtic trial testimony, p. 62.)

Not only did the Sheriff receive direct notice of the need for training through the lawsuit, the evidence at trial established that the need for training was obvious. For example, Deputy Nance, who has been employed as a sheriff's deputy on Daley Plaza since 2004, testified that he

7

sees panhandlers on Daley Plaza every single day and that he has seen them there since the day he started working:

> Q. Am I correct that you see panhandlers, or people asking for money, around the Daley Plaza every day?
>
> A. Yes, on a daily basis.
>
> Q. And for how long has that been the case?
>
> A. Since I started in 2004.

(Ex. 2, Nance Trial Testimony, p. 10.)

Further, Deputy Nance testified that it was so obvious that dealing with panhandlers was something he would encounter on the job, he performed his own research on the matter, undertaking a Google search to determine whether panhandling was or was not permitted. He testified as follows:

> Q. And you conducted your own research on the Chicago panhandling ordinance because it was your practice to do that for things that might occur on your post, right?
>
> A. Yes, ma'am.
>
> Q. Okay. You did it because you tend to research things that you know will occur at your post, right?
>
> A. Yes, that's correct.
>
> Q. And you knew that you would encounter people who wanted to panhandle at your post, right?
>
> A. I did it because I could see that each and every day there were panhandlers on the plaza.
>
> Q. Okay. So you saw panhandlers each and every day, and you thought you ought to know about what their rights were, right?
>
> A. Especially the ones that were being aggressive, correct.

> Q. Okay. So you thought it was important to know what the law was regarding what you could and could not do for panhandling, right?
>
> A. That is correct.
>
> Q. That was because that was something you were very likely to have to deal with on your job, right?
>
> A. Yes, ma'am.

(Ex. 2, Nance trial testimony p. 17.)

Based on this testimony, it was obvious that dealing with panhandlers was something that deputies assigned to the Plaza would encounter frequently, if not daily, and that this was an area where training was necessary.

### C. The Sheriff's Failure to Train Caused the Constitutional Violation at Issue

Third, the uncontested evidence at trial establishes that the Cook County Sheriff's Department's failure to provide adequate training caused Defendant Dalibor Jevtic to violate Plaintiff's First Amendment rights.[1] At trial, Deputy Jevtic testified that the reason he told Plaintiff Pindak that he could not panhandle on the Plaza on that day was that it was his understanding that peaceful panhandling was prohibited on Daley Plaza. He testified as follows:

> Q. So on that recording, you told Kim Pindak that there is no panhandling on the plaza itself for anyone. Why did you say that?
>
> A. Based on my prior employment with the building, I was under the belief that anybody conducting any business or anything like that in the plaza, they would need to get a special permit from the building. That's why they weren't allowed to engage in the activity on the plaza. Panhandling, to me, was believed to be engaging in any business or activity on the plaza.

(Ex. 1, Jevtic Trial Testimony, p. 57.)

When Jevtic was hired as a Sheriff, he was not told otherwise:

---

[1] This Court has already ruled that Defendant Deputy Sheriff Jevtic violated Plaintiff Kim Pindak's First Amendment right to peacefully panhandle on Daley Plaza on May 7, 2012.

9

> Q. And so you're saying that, when you testified in your deposition that it was your understanding that panhandling was not allowed anywhere on the plaza, that was the understanding that had carried over from your time working as private security; right?
>
> A. Correct.
>
> Q. Now, no one in the sheriff's department ever told you otherwise; did they?
>
> A. No.

(Ex. 1, Jevtic Trial Testimony, p. 57.)

Finally, Jevtic testified that had he been trained by the Sheriff's Department that peaceful panhandling was legal on the plaza, he would not have told Pindak that "no panhandling is allowed on the plaza" and would not have violated Plaintiff Kim Pindak's rights:

> Q. So when you told Mr. Pindak there was no panhandling on the plaza itself for anyone, would you have said that if you had received a policy from the sheriff informing you that panhandling is allowed on Daley Plaza?
>
> A. Yes, I would have not said that.
>
> Q. You wouldn't have said that if you had training; right?
>
> A. Correct.

(Ex. 1, Jevtic trial transcript, p. 60.) Jevtic's testimony is clear and undisputed— he would not acted in the way he did had he been properly trained, thereby establishing that the Sheriff's failure to train was the cause of Jevtic's interference with Plaintiff's rights.

## IV. Conclusion

Federal Rule of Civil Procedure 50(b) provides that if party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may resolve the issue against the party and grant a motion for judgment as a matter of law. The uncontroverted facts elicited by the Plaintiffs at trial conclusively establish each element of Plaintiffs' *Monell* claim.

10

Accordingly, judgment as a matter of law, prior to submitting this claim to the jury, is appropriate in this case.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court grant Plaintiffs Pindak judgment as a matter of law on his *Monell* claim.

Respectfully submitted,

/s/ Adele D. Nicholas
/s/ Mark G. Weinberg
/s/ Sara A. Garber
*Counsel for Plaintiffs*

Mark G. Weinberg
3612 N. Tripp Ave.
Chicago, Illinois 60641
773.283.3913

Adele D. Nicholas
4510 N. Paulina Street, 3E
Chicago, Illinois 60640
847.361.3869

Sara Garber
2502 West Division Street
Chicago, Illinois 60622
850.408.2020